**In re MACE LEVIN ASSOCIATES, INC., Debtor.**

**Bankruptcy No. B87–02549.**

United States Bankruptcy Court, N.D. Ohio.

July 25, 1989.

See also 92 B.R. 753.

**142**

Regis J. Schnippert, Pittsburgh, Pa., and Steve Jonnet, Monroeville, Pa., for Clairton.

Saul Eisen, Cleveland, Ohio, trustee.

Joel Levin, Cleveland, Ohio, Special counsel, for trustee.

## MEMORANDUM OF DECISION ON ARBITRATION MOTIONS

DAVID F. SNOW, Bankruptcy Judge.

This case was filed in chapter 11 on July 21, 1987 and converted to chapter 7 on December 18, 1987. Debtor's trustee (the "Trustee") through his special counsel seeks an order permitting him to proceed with a pre-petition arbitration of the Trustee's claim against Clairton Corporation ("Clairton") under a lease agreement dated February 24, 1986 (the "Lease"). Clairton too would proceed with the arbitration provided that it obtains relief from the automatic stay so as to enable it to assert as a counterclaim its damages arising out of the rejection of the Lease. The Trustee contends that this would be improper primarily because in his view the setoff of Clairton's claim is not permissible under section 553 of the Bankruptcy Code. The matter is before the court because the arbitrators have refused to act without direction from the court.

### Background

The claims at issue arose under Clairton's lease to the Debtor as a tenant of a retail store in Monroeville, Pennsylvania. The Trustee's claim is for damages which he alleges were caused primarily by Clairton's failure to deliver possession of the store when promised under the Lease. In early April 1986 the Debtor sued Clairton for possession of the store in the United States District Court for the Western District of Pennsylvania, and the Debtor was given possession of the store on April 22, 1986. That did not end the parties' struggle, however. On February 19, 1987 the Debtor initiated the arbitration proceeding to recover damages from Clairton pursuant to an arbitration clause in the Lease. Clairton filed an answer in that proceeding which, among other things, asserted that the Debtor's claim was not arbitrable and that Clairton had terminated the Lease. Clairton demanded that the Debtor surrender the store or in the alternative that the parties' dispute be determined not arbitrable because jurisdiction was properly before the Court of Common Pleas of Allegheny County, Pennsylvania.

It is not clear from the record before this court what else occurred in the arbitration proceeding prior to Debtor's filing for reorganization in July, 1987. It appears, however, that the Debtor continued to occupy the store after its chapter 11 filing until the Lease was rejected in October, 1987. Since the filing, the special counsel appears to have urged the arbitrators to proceed with the Trustee's damage claim alone. But these efforts appear to have been somewhat desultory since special counsel was not appointed by this court to represent the Trustee until March of 1988. In any event, the arbitrators refused special counsel's entreaties so long as Clairton's claim was stayed. In his letter of October 14, 1987 Mr. Marshall J. Conn on behalf of the arbitrators stated that this court should decide questions relating to the stay and how the arbitration should proceed. However, he expressed the view of the arbitrators that "[i]t would be fundamentally unfair to permit a debtor in bankruptcy to invoke the protection of the automatic stay provisions, and thereby thwart its adversary's claim, while simultaneously permitting it to pursue its own claim against that very adver-

sary in a forum outside the Bankruptcy Court." He expressed the view that both claims should be heard together in the same proceeding.

There the matter appears to have rested until March of 1988 when the Trustee obtained the order from this court employing special counsel. Thereafter special counsel apparently used his appointment to renew his request that the arbitration proceed, but his request was again rejected in Mr. Conn's letter of June 22, 1988. In that letter Mr. Conn stated "[w]e consider that an express mandate of the Bankruptcy Court is required—either to hear both claims or to proceed with Mace Levin's claim to the exclusion of Clairton's claim."

Through his special counsel the Trustee asserts the right to proceed with the arbitration on his damage claims against Clairton without permitting the arbitrators to hear Clairton's damage claim for rejection, which Clairton says totals $418,950 in the proof of claim it filed with this court on November 23, 1987. Clairton insists that the court either deny the Debtor's motion to proceed with arbitration or lift the automatic stay so that its claim may be heard by the arbitrators. That this is more than a procedural dispute is made clear by the fact that the parties have deluged this court with pleadings and briefs. The parties appear to believe that the answer to this procedural question may render one claim or the other substantially worthless. From the record it is not clear what would be left of the Trustee's claim if Clairton's claim can be offset or, if it cannot, what value Clairton's claim would have even if ultimately allowed in full. Moreover, the answer may also be of critical importance to the Trustee's special counsel. Since he was hired on a contingent fee pegged to 30 percent of the net recovery on the Debtor's claims, his remuneration may well be on the line.

### Discussion

Clairton is now barred from proceeding with its counterclaim by the section 362 automatic stay. The fundamental issue, however, is whether section 553 of the Bankruptcy Code permits setoff of Clairton's claim. Although the Trustee suggests other procedural and substantive impediments to Clairton's asserting its rejection claim in the arbitration proceeding, these appear to be either without merit or to depend on facts to be developed at trial. In any event, the Trustee asserts no basis under the Bankruptcy Code to deny Clairton relief from the stay other than his argument that section 553 is inapplicable.

In order for a setoff to be permitted under section 553, there must be mutual pre-petition claims owing between the parties. The Trustee's principal argument that setoff is not permissible is that the Trustee rejected the Lease after the bankruptcy filing and therefore that Clairton's rejection claim arose post-petition not pre-petition. To prevail on this argument the Trustee must avoid the mandate of both sections 365(g) and 502(g) of the Bankruptcy Code. Since the Lease was not assumed, section 365(g)(1) ordains that its rejection "constitutes a breach of such ... lease ... immediately before the date of the filing of the petition; ...." That date, according to section 348 of the Bankruptcy Code, is the date the Debtor filed its original petition under chapter 11. Section 502(g) is categorical in classifying rejection claims as pre-petition claims.

The Trustee points out correctly that this characterization avoids granting these claims administrative priority status, and argues, in effect, that these sections create a legal fiction which ought not to apply to section 553. But the Trustee cites no authority to support his argument and gives no reason not to treat rejection damages as arising pre-petition for purposes of section 553 except that this would increase the Debtor's estate. But this is really an argument against setoff itself and, in enacting section 553, Congress decided otherwise. The Trustee's assertion that section 502(g) does not apply to this chapter 7 proceeding because section 502(g) refers only to chapters 9, 11, 12 and 13 and not to chapter 7 misses the mark. Section 502(g) references the designated chapters only in connection with rejections effected in reorganization

144

plans. Since there are no reorganization plans in a chapter 7 case, it would not make sense to refer to chapter 7 in connection with rejections made pursuant to a reorganization plan. By its express terms section 502(g) applies to rejection made either under section 365, as was the case here, or under a plan.

Moreover, the characterization of rejection claims as pre-petition obligations is not simply a legal fiction created by sections 365(g) and 502(g). The Lease was entered into pre-petition and by virtue of this fact imposed pre-petition obligations on both parties. Given its long-term and continuing nature, however, it could have been transmuted into a post-petition obligation had the Debtor assumed it. Since it was not assumed, the only post-petition obligations relating to Debtor's tenancy arose during the months from the filing in July, 1987 until Debtor vacated the store in October, 1987, and such obligations are not at issue.

■ In affording a debtor some time after filing to decide whether to assume or reject, the Bankruptcy Code puts leases and executory contracts on hold in a peculiar legal limbo. There was no question of the Debtor's pre-petition legal obligation under the Lease, but at the time of filing it was not determinable whether that obligation would be performed in accordance with its terms or, as in the case of most pre-petition obligations of a Debtor, give rise to a damage claim. But some uncertainty as to the claim at the time of filing is not fatal to its pre-petition status. A claim need not have matured or been liquidated in order to apply section 553. *In re Matthieson*, 63 B.R. 56 (D.Minn.1986). There is no reason why the added uncertainty on the date of filing of whether the Lease would be assumed or rejected should change the result.

The Trustee's attempt to distinguish Clairton's principal case, *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160 (2nd Cir.1979), only dramatizes the weakness of his position. In *Bohack* the court held that an antitrust defendant was entitled to assert its claim for goods sold against the debtor in the debtor's antitrust proceeding pending in another court. This was a chapter XI reorganization proceeding brought under the Bankruptcy Act and the court devoted much of its opinion to an attempt to reconcile the creditor's right to setoff against the needs of a reorganizing debtor. Although the opinion states that allowance "of a setoff is a decision which ultimately rests in the sound discretion of the bankruptcy court," *id.* at 1165, it concludes that "the equities of this situation persuade us that Borden's pursuit of its counterclaim in the antitrust litigation would not defeat the policies and purposes of Chapter XI and [the automatic stay]" *id.* at 1168. Since this Debtor is in liquidation, not reorganization, allowing setoff affects only the relative distribution among creditors, not the existence of a business. The equities as perceived in *Bohack* would clearly require that setoff be permitted here.

The Trustee also would distinguish *Bohack* on the ground that the creditor in that case sought to offset a claim for goods sold against a debtor's antitrust claim. Since the *Bohack* court nowhere ties together the goods sold with the antitrust claim or purports to justify its ruling on some nexus between the two, the thrust of this argument eludes me. In fact, a comparison of the relationship between the claims in *Bohack* and in this case appears to undercut the Trustee's argument.

Several cases have held that where claims arise out of the same transaction the right to offset, described as recoupment, is entitled to more exalted status than ordinary setoff and permits the offset of a pre-petition claim against a post-petition obligation. *Ashland Petroleum v. Appel (In re B & L Oil Co.)*, 782 F.2d 155 (10th Cir.1986). The justification for this position is that an offset arising out of the same transaction is more in the nature of a defense than a counterclaim. *Lee v. Schweiker (In re Lee)*, 739 F.2d 870 (3rd Cir.1984); *see Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). Where, as here, both claims arise under the same agreement, there is authority that

recoupment applies. *See Ashland Petroleum v. Appel, supra.*

█ I see no need or reason, however, to appeal to recoupment under the facts of this case, since setoff is clearly proper under section 553. However, the fact that both claims arise under the Lease suggests to me, as it did to the arbitrators, that the claims of both parties should be litigated in the same proceeding. Since there may be common issues, this involves considerations of judicial economy as well as fairness.

█ At this point, however, it is by no means clear that the forum should be arbitration. As the arbitrators make clear, there is no question but what this court has the power to decide these claims notwithstanding the arbitration clause in the Lease. *Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55 (3rd Cir.1983). It is also clear, however, that the Trustee's choice of forum should ordinarily be respected. *In re Al–Cam Development Corp.,* 99 B.R. 573 (Bankr.S.D.N.Y.1989). In light of the court's decision that Clairton is entitled to setoff under section 553, the choice of forum should be reconsidered by the Trustee.

It is not clear from the record which claim is more substantial. In view of the fact that Clairton has filed its proof of claim with this court, resolution of these claims would appear to be proceedings within the court's core jurisdiction. If there are considerations which militate in favor of arbitration, they are not apparent from the record and should be developed by the Trustee. In any event, it appears that the Trustee should reassess his decision to arbitrate his claim against Clairton in light of this decision. Inasmuch as special counsel's employment was limited to handling the Trustee's claim in arbitration and without consideration of the effect of Clairton's counterclaim or the possibility of resolving the parties' dispute in this court, the Trustee should also reassess his need for special counsel.

### Legal Conclusions

Clairton may offset its rejection damages under section 553 of the Bankruptcy Code against the Trustee's claims. Clairton may, pursuant to subsequent order of the court, obtain relief from the section 362 automatic stay to the extent necessary to litigate its claim for rejection damages in the same proceeding in which the Trustee pursues his claims against Clairton under the Lease.

### ORDER ON ARBITRATION MOTIONS REGARDING CLAIRTON CORPORATION

The Court having rendered its Memorandum of Decision on Arbitration Motions,

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:

1. The Trustee's motion to proceed in arbitration be, and it hereby is, denied without prejudice to its reconsideration in light of the views expressed in the Decision.

2. The Trustee shall promptly reconsider whether his disputes with Clairton should be resolved in arbitration and whether the continued employment of special counsel is desirable.

3. Clairton Corporation's motion to proceed in arbitration is denied without prejudice to its reconsideration in light of the views expressed in the Decision. The stay imposed by section 362 of the Bankruptcy Code be, and it hereby is, modified to permit Clairton Corporation to assert its counterclaim against the Trustee in the event that this court should approve continuation of the arbitration.

4. The hearing on this matter scheduled for 8:30 A.M. on July 27, 1989 is adjourned to 8:30 A.M. on September 28, 1989, and any motions by either party in response to this Decision shall be filed and served at least 20 days prior to that date.