In the Matter of ISIS FOODS, INC., and Isis Leasing, Inc., Debtors.

TRADERS BANK OF KANSAS CITY, Plaintiff,

v.

John R. STONITSCH, trustee in bankruptcy, Defendant.

Bankruptcy Nos. 82–00209–3–11, 82–00210–3–11.

Adv. No. 82–1129–3–11.

United States Bankruptcy Court, W.D. Missouri, W.D.

Sept. 28, 1982.

James E. Bird, Kansas City, Mo., for plaintiff.

Louis A. Huber III, Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT GRANTING PLAINTIFF'S COMPLAINT FOR RELIEF FROM THE AUTOMATIC STAY TO EFFECT PROPOSED SETOFF

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff seeks relief from the automatic stay to effect a postbankruptcy setoff on account of a prebankruptcy loan made to the debtor Isis Foods, Inc. The defendant defends the complaint on the grounds that relief from the stay is not appropriate because there is not mutuality of the proposed setoff and accordingly also counterclaims for turnover of the funds in the bank.

The action came on before the court for hearing on September 13, 1982, whereupon the plaintiff appeared by counsel, James E. Bird, Esquire, and the defendant appeared by counsel, Louis A. Huber III, Esquire, and the parties filed the following written stipulation of facts on the crucial material issues:

"1. This Court has jurisdiction over the parties hereto and the subject matter of this action pursuant to 28 U.S.C. section 1471 and 11 U.S.C. section 362.

"2. That plaintiff Traders Bank of Kansas City is a corporation organized and existing in the State of Missouri and is engaged in the general banking business in Kansas City, Missouri.

3. That defendant Isis Foods, Inc. filed a voluntary petition, styled # 82–00209–3–11, under Chapter 11 of the Bankruptcy Code on January 22, 1982.

"4. That Isis Foods, Inc., continued in possession of its property and operated its business as debtor-in-possession until February 22, 1982.

"5. That on February 22, 1982, Mr. William R. Von Der Ahe was appointed Trustee for Isis Foods, Inc.

"6. That defendant Isis Leasing, Inc. filed a voluntary petition (styled # 82–00210–3–11), under chapter 11 of the Bankruptcy Code on January 22, 1982.

"7. That Isis Leasing, Inc. continued in possession of its property and operated its business and managed its property as debtor-in-possession until July 1, 1982.

"8. That on July 1, 1982, the cases of Isis Foods, Inc. and Isis Leasing, Inc. were consolidated for purposes of administration.

"9. That on July 1, 1982, defendant Mr. *John Stonitsch was appointed trustee, re*placing Mr. William R. Von Der Ahe.

"10. That on June 19, 1981, Isis Leasing Co., Inc., pursuant to valid corporate resolution authorizing such borrowing, executed and delivered to Traders Bank of Kansas City an installment note in the sum of $66,931.20.

"11. That such installment note was payable in forty-eight (48) consecutive monthly installments of $1,394.00.

"12. That such installment note was unconditionally guaranteed by Isis Foods, Inc.

"13. That at the date of the filing of the voluntary bankruptcy by both Isis Leasing Co., Inc. and Isis Foods, Inc. all installments due under such installment note had been paid, and said note was not then in default.

"14. That since the filing of the voluntary petition no installment payments have been tendered.

"15. That the balance currently due under such installment loan is $46,773.68 excluding interest.

"16. That as of January 22, 1982, the date of filing of voluntary bankruptcy, Isis Foods, Inc., maintained a *checking* account with Traders Bank of Kansas City, said account being Account Number 980–016–6, in which there was on deposit a balance of $15,078.63.

"17. Traders has waived all rights to a preliminary hearing with(in) thirty (30) days under ... the Bankruptcy Code."

Based on these facts, it is the position of the defendant trustee in bankruptcy that the governing section, section 553 of the Bankruptcy Code restricts setoff to "a mutual debt owing by such creditor to the debtor that arose *before the commencement of the case under this title* against a claim of such creditor against the debtor that arose *before the commencement of the case* ...";  that, under the foregoing facts, under the law of Missouri, "a bank has no right to setoff its customers' deposits to reduce its customers' indebtedness on a note not yet due";  and that, "(e)ven if setoff were allowed under Missouri law, ... all payments *due to Traders had been made and the note* was not in default on the date of the petition, and thus the Bank had no claim *arising before the commencement of the case that can be asserted against the funds on deposit.*"  (Emphasis in original.)

■ It is patent law on the issue of setoff, however, that "the *right of setoff* may be asserted in the bankruptcy case even though at the time the petition is filed one of the debts involved is *absolutely owing but not presently due,* or where a definite liability has accrued but is as yet unliquidated.  Nor is it necessary that the debt sought to be setoff be due when the case is commenced."  4 Collier on Bankruptcy para. 553.10(2), pp. 553–49, 553–50 (1982).  In this case, in which there can be no question about the existence of the debt, and the fact that it was "absolutely owing," albeit as yet unmatured, the bank's right of setoff must be regarded as manifestly present.  Although it has sometimes been held that a bank may not exercise a pre-bankruptcy setoff with respect to unmatured claims against the debtor, a postbankruptcy setoff with respect to an unmatured

claim has been approved as a matter of hornbook law. "(A) ... difficult problem arises ... where the depositor's indebtedness to the bank has not matured at the time of the attempted setoff. This problem is to be differentiated from an offset of unmatured claims *after* bankruptcy, which is generally permitted subject to the terms of section 361, 362(a)(7), and 363(e)." *Id.,* para. 553.16, pp. 553–79, 553–80. None of the qualifying statutes are made issues by the parties in their stipulation or in their briefs. These fundamental considerations require the court of bankruptcy to permit the bank to exercise its properly asserted right of setoff after bankruptcy. It is neither asserted nor proved nor stipulated that any of the monies on deposit as of the date of bankruptcy were deposited within 90 days of the date of bankruptcy so as to invoke the provisions of section 553(b)(1) of the Code or other provisions which may, in such an instance, limit the right of setoff.

Further, in the exercise of discretion, the court must be aware of the traditional leeway given to banks when the subject of setoff is considered and the reluctance that a bankruptcy court must generally observe in limiting that right so that it is exercised only in accordance with explicit and governing legal principles. When the right of setoff is "properly invoked before a court, (its application) rests in the discretion of that court ..." 4 Collier on Bankruptcy para. 553.02, pp. 553–10, 553–11 (1982). "(T)he cases uniformly hold that the right to a set-off is discretionary." *In re Diplomat Electric, Inc.,* 361 F.Supp. 1163, 1165 (S.D.Fla.1963), affirmed 499 F.2d 342, 346 (5th Cir.1974). In this action, equitable as well as legal considerations favor the allowance of the setoff.

The defendant's reliance on *Matter of American Motor Home Rentals,* 10 B.R. 53, 57 (Bkrtcy.W.D.Mo.1981), in this action is misplaced. In that case, the court held that "a setoff against the bankruptcy estate cannot be exercised on the basis of a claim arising after bankruptcy." But in that action, as was made clear by the court in note 11, page 57, there was no debt absolutely owing, though presently contingent or unmatured, as of the date of bankruptcy. The stipulated facts of this case demonstrate the contrary, i.e., that there was an indebtedness absolutely owing, albeit not yet due, as of the date of bankruptcy.

It is therefore, for the foregoing reasons,

ORDERED AND ADJUDGED that the plaintiff's complaint for relief from the automatic stay for the purpose of effecting the proposed setoff be, and it is hereby, granted. It is further, accordingly,

ORDERED AND ADJUDGED that the defendant's counterclaim for turnover be, and it is hereby, denied.