**In re Darlene L. KEENE, Debtor.**

**Dennis G. BEZANSON, Trustee,**
**Plaintiff,**

v.

**ST. PIERRE CREDIT UNION,**
**Defendant.**

**Bankruptcy No. 283–00320.**
**Adv. No. 284–0011.**

United States Bankruptcy Court,
D. Maine.

Aug. 23, 1984.

Dennis G. Bezanson, So. Portland, Me., for plaintiff.

Paul C. Fournier, Lewiston, Me., for defendant.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

The trustee filed a complaint for turnover of assets held by the debtor's credit union. In response, the credit union counterclaimed for relief from the section 362 stay so that it can set-off funds held by the credit union against an overdue loan and, if necessary, notify the debtor of her right to cure. The court concludes that the credit union is entitled to relief from the automatic stay.

The debtor, who filed a chapter 7 bankruptcy petition on November 30, 1983, borrowed $1872 from the St. Pierre Credit Union in Lewiston, Maine, on June 7, 1982. Including charges, the note totalled $1929.33, financed at ten and one half percent a year over thirty-six months. Monthly payments on the note were set at $62.70. As security for the loan, the debtor pledged her credit union shares in the amount of $1872. In addition, the agreement provided that the lender's security interest included future additions to the share account, up to the amount of the unpaid balance of the loan, and gave the lender the right to offset the assets and future additions against the unpaid balance of the loan. The lender reserved the right to accelerate the balance of the note upon the borrower's default. The agreement provides, however, that the credit union's rights "are subject to the consumer's right to cure under the provisions of the Maine Consumer Credit Code." When the debtor filed her petition, she was in default on eight (8) payments, totalling $501.60, but the credit union had not sent her a notice of right to cure the default, as delineated in the Maine Consumer Credit Code, 9A M.R.S.A. §§ 5–110 and 5–111 (1980 and Supp.1983–1984).

■ The trustee argues that because the lender failed to give notice, the credit union's interest attached only to the amount of $501.60, the sum of the delinquent payments at the date of the petition. He contends that the balance of the share account must be turned over. This argument misconstrues the relevant portions of the Uniform Commercial Code. First, a security interest attaches when (1) the collateral is in the possession of the secured party, (2) value has been given, and (3) the debtor has rights in the collateral. 11 M.R.S.A. § 9–203(1) and (2) (Supp.1983–1984). The interest is perfected when it has attached and the requisite perfection steps have been taken. 11 M.R.S.A. 9–303(1) (1964). When the collateral is money, the secured party may perfect his interest by possession alone. 11 M.R.S.A. §§ 9–302(1)(a) and 9–305 (1964 and Supp.1983–1984).

As a consequence, under the Maine Uniform Commercial Code, the security interest of St. Pierre Credit Union in the debtor's share account is perfected. The requirements for attachment have been met, and because the secured party holds the collateral, the interest has been perfected since the date of the loan. The credit union, therefore, holds in the entire account balance an interest superior to that of the trustee.

■ The trustee also contends that provisions of the Maine Consumer Credit Code, 9–A M.R.S.A. §§ 1–101 to 8–404 (1980 and Supp.1983–1984),[1] determine that the defendant's secured interest at the date of filing was only $501.60, the sum of the overdue payments at that time. The Consumer Credit Code allows that when a consumer is ten days late in making a loan payment, the creditor may send a notice of right to cure:

> With respect to a consumer credit transaction, after a consumer has been in default for 10 days for failure to make a required payment and has not voluntarily surrendered possession of goods that are collateral, a creditor may give the con-

---

1. Although it is not clear to the court that the loan at issue would otherwise be governed by the Consumer Credit Code, the statute provides that a loan which is not a consumer credit transaction may be subjected to the provisions of the Act if the parties so agree in a signed document. 9–A M.R.S.A. § 1–109 (1980). The note between the debtor and the credit union contained such an agreement.

sumer the notice described in this section. For purposes of this section, goods that are collateral shall include any right of set-off that the creditor may have. A creditor gives notice to the consumer under this section by mailing the notice to the consumer's residence....

9–A M.R.S.A. § 5–110(1) (1980). Further, when default consists of failure to make a required payment, the creditor *"may neither accelerate* maturity of the unpaid balance of the obligation, *nor take possession of or otherwise enforce a security interest in ... collateral* until 20 days after a notice of the consumer's right to cure ... is given...." 9–A M.R.S.A. § 5–111 (1980) (emphasis added). "Collateral" under this statute includes a right of set-off. *Id.* If the consumer cures the default within the twenty day period by paying all overdue installments and delinquency charges, the lender may not accelerate. *Id.*

Although the Consumer Credit Code provides the loan recipient with certain rights, it does not alter the lender's properly perfected security interest. The debtor in this proceeding has received no notice of right to cure, but the credit union's security has not been reduced by its failure to give notice. Upon the intervention of bankruptcy the creditor need not and may not notify the debtor of the right to cure. 9 M.R.S.A. § 5–111 (1980). It would be a useless gesture and in itself could be a violation of the automatic stay. The creditor's remedy is to seek relief from the stay imposed by section 362(a)(7) of the Bankruptcy Code. 11 U.S.C.A. § 362(a)(7) (1979); *United States v. Norton,* 717 F.2d 767, 771 (3d Cir.1983). This the creditor has done.

■ Finally, even without a perfected security interest, the creditor could seek relief to exercise its common law right of set-off. Section 553 in part reads:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to *offset a mutual debt* owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C.A. § 553(a) (1979) (emphasis added). To exercise the set-off, the creditor must show mutuality of the pre-petition debts. *Michigan Consolidated Gas Co. v. Fred Sanders Co. (In re Fred Sanders Co.),* 33 B.R. 310, 311 (Bankr.E.D.Mich. 1983); *Energy Cooperative Inc. v. Murphy Oil Co. (In re Energy Cooperative Inc.),* 32 B.R. 680, 682 (Bankr.N.D., Ill.1983). As long as the mutual debts were absolutely owing, even if not presently due at the time of filing, the set-off right exists. 4 *Collier on Bankruptcy* ¶ 553.10[2], at 553–49 to 553–51 (L. King 15th ed. 1984). *See also Traders Bank of Kansas City v. Stonitsch (In re Isis Foods, Inc.),* 24 B.R. 75, 76 (Bankr.W.D.Mo.1982).

In this proceeding, the credit union and the debtor owe mutual debts established well over a year before the filing of the petition.

An appropriate order will be entered.