In re EXPRESS FREIGHT
LINES, INC., Debtor.

EXPRESS FREIGHT LINES,
INC., Plaintiff,

v.

Frank C. KELLY, Defendant.

Bankruptcy No. 89–02929.
Adv. No. 90–0055.

United States Bankruptcy Court,
E.D. Wisconsin.

July 15, 1991.

See also 119 B.R. 1006.

Jack U. Shlimovitz, Ludwig & Shlimovitz, S.C., Milwaukee, Wis., for plaintiff.

Leigh H. Savage, Dold, Spath & McKelvie, P.C., Grosse Point, Mich., for defendant.

## MEMORANDUM DECISION

M. DEE McGARITY, Bankruptcy Judge.

This adversary action was filed by the then debtor-in-possession, Express Freight Lines, Inc. ("Express"), on February 20, 1990. The complaint asked the court to disallow Frank C. Kelly's ("Kelly") claim for setoff of the full amount (accelerated as of the date of filing) of obligations that the parties owed each other. The complaint further demanded payment by Kelly of his obligation to Express of all installments due as of the filing of the complaint and demanded that each successive installment be paid in full, without setoff, as it becomes due.

The debtor was converted to a case under Chapter 7 after this adversary proceeding was commenced.

In response to Express' adversary complaint, Kelly moved for dismissal of the complaint, incorporating his earlier motion for relief from the automatic stay to accomplish setoff. The adversary proceeding and the motion were consolidated. Both parties have moved for at least partial summary judgment on the setoff issue pursuant to Fed.R.Civ.P. 56 incorporated in Bankruptcy Rule 7056. The pertinent facts are undisputed, making this case appropriate for summary judgment. *See U.S. v. Ettrick Wood Products, Inc.*, 916 F.2d 1211, 1219 (7th Cir.1990); *Collins v. American Optometric Ass'n.*, 693 F.2d 636, 639 (7th Cir.1982). The parties disagree on the legal interpretation of certain language regarding setoff in 11 U.S.C. § 553(a). Kelly also raised the defense of recoupment in his brief. Additionally, the creditors' committee argued that 11 U.S.C. § 553(b)(1) should limit any allowable setoff to the extent that Kelly's position was improved in the 90 days preceding the bankruptcy filing.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

For the reasons stated below, the court will allow the full amount of the setoff. The net amount after setoff is the amount of Kelly's claim. If Kelly has been able to mitigate damages (he has a subtenant for a lesser amount than the lease provided), the effect of the mitigation on the amount of the claim, or possibly the amount due the debtor if Kelly is able to mitigate his loss to a substantial extent, will be determined at a later date.

## FACTS

The facts are prosaic, involving the sale and leaseback of a truck terminal facility in Romulus, Michigan. Kelly purchased the property from Express, and Express financed $100,000 of the purchase price. Kelly executed a promissory note on December 23, 1987, which required monthly payments to Express of $2,211.83 over 60 months. As of the filing date, June 16, 1989, the parties agreed that a balance of $78,761.00 remained on the promissory note.

Negotiated with the sale transaction was a leaseback arrangement for part of the building by Express. It agreed to monthly payments to Kelly of $12,500 under a written five year lease. By terms of the promissory note, Kelly's monthly payments of $2,211.83 were offset against Express' monthly lease payments. Thus, Express paid Kelly $10,288.17 per month.

Express filed its Chapter 11 petition on June, 16, 1989, and rejected the lease with Kelly on August 15, 1989. 11 U.S.C. § 365(b)(4). Pursuant to the parties' agreement, Kelly's claim for the pre-petition rental default is $19,099.50, and damages of one year's rent allowed by 11 U.S.C. § 502(b)(6) is $150,000.00, for a total claim of $169,099.50. Of this amount, Kelly claims that the amount remaining on his note, $78,761.00, is a secured claim, and the balance is unsecured.

## DISCUSSION

### 1. SETOFF

The creditor's right of setoff is delineated in § 553(a), which provides:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ...

██ "The right of setoff under section 553 is permissive, not mandatory ..." and its allowance is within the discretion of the court. *4 Collier on Bankruptcy,* § 553.02 at 553–11 (15th Ed.1991). *See also In re NWFX, Inc.,* 864 F.2d 593, 595 (8th Cir. 1989); *In re Rosenbaum Grain Corporation,* 103 F.2d 656, 658 (7th Cir.1939); *Matter of Isis Foods, Inc.,* 24 B.R. 75, 77 (Bankr.W.D.Mo.1982). Courts look to the parties' contractual relationship in the light of state law to determine whether there is a valid and enforceable basis for setoff before considering whether it would be equitable to allow it. *See Butner v. U.S.,* 440

U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Boston and Maine Corporation v. Chicago Pacific Corporation,* 785 F.2d 562, 565 (7th Cir.1986); *In re Cabrillo,* 101 B.R. 443, 448 (Bankr.E.D.Pa.1989); *In re McLean Industries, Inc.,* 90 B.R. 614, 618 (Bankr.S.D.N.Y.1988). Although there must be a state law right of setoff in order for 11 U.S.C. § 553 to be applicable, the granting or denial of setoff after one of the parties files a bankruptcy petition is prescribed by the terms of 11 U.S.C. § 553. *In re Elsinore Shore Associates,* 67 B.R. 926, 942 (Bankr.D.N.J.1986). In other words, 11 U.S.C. § 553 limits the use of setoff rights already available under state law, but it does not expand setoff rights to encompass rights that do not otherwise exist under state law. *Boston and Maine Corp.,* 785 F.2d at 565.

██ Kelly has the burden of proof to show entitlement to setoff. *McLean,* 90 B.R. at 618; *In re Williams,* 61 B.R. 567, 570 (Bankr.N.D.Tex.1986).

In this case, Kelly's promissory note provides that the note "shall be governed and construed in accordance with the laws of the State of Michigan." Both Michigan and Wisconsin have counterclaim or setoff statutes. Wisconsin's previous setoff statutes, Wis.Stat. §§ 895.07 through 895.13, were repealed in 1976, and replaced with Wis.Stat. § 802.07, the present counterclaim and cross-claim statute. Section 802.07 allows a defendant to "counterclaim any claim which the defendant has against a plaintiff, upon which a judgment may be had in this action." Here, Kelly would have had a right to damages under the lease. The Judicial Council Committee's 1974 historical notes recommended repeal of the setoff statutes and commented that "if in a given case a setoff raised by counterclaim should not be allowed for reasons of equity or otherwise, the court may dismiss the counterclaim, order a separate trial, or draw its judgment in such a manner as to preclude setoff." Michigan's counterclaim statute, MI.ST. § 600.111, while not as clear as Wisconsin's statute, appears to be similar in substance. It reads: "Sec. 111. The term 'counterclaim,'

as used in this act, includes setoff and recoupment." Neither party argued that Michigan has any setoff provisions that are peculiar to that state. Accordingly, under either state's law a court can allow or deny setoff of unrelated claims as circumstances warrant.

Bankruptcy courts have consistently allowed setoff even though this right is "at odds with the fundamental bankruptcy principle of equality of distribution among creditors because it permits a creditor to obtain full satisfaction of a debt by extinguishing an equal amount of the creditor's obligation to the debtor." *Williams*, 61 B.R. at 570. Courts have allowed this right because without it, it would be unfair to require a creditor to pay in full what is owed to the debtor only to receive a portion, if that, of its claim against the debtor. *Id.* See also *In re Morristown Lincoln Mercury, Inc.*, 42 B.R. 413, 416 (Bankr. E.D.Tenn.1984) *quoting 4 Collier on Bankruptcy*, § 553.02 at 553–10 (15th Ed. 1984). Judge Posner's explanation of the rationale for Congress' decision to retain the right of setoff in the Code is: "the only sense we can make of the rule is that it recognizes that the creditor who owes his debtor money is like a secured creditor; indeed, the mutual debts, to the extent equal, secure each party against the other's default." *Matter of Elcona Homes Corp.*, 863 F.2d 483, 485 (7th Cir.1988); also quoted in *In re NTG Industries*, 103 B.R. 195, 197 (Bankr.N.D.Ill.1989). Kelly's assertion that his claim for damages under the lease is secured up to the balance due on his note is consistent with this view.

■ Since it is clear that state law would allow setoff of the rights of each party, 11 U.S.C. § 553 can be applied. The elements necessary to ascertain a creditor's right to setoff under 11 U.S.C. § 553 are:

1. The debt owing by the creditor to the debtor must have arisen before the bankruptcy filing;

2. The claim of the creditor against the debtor must also have arisen before the bankruptcy filing; and

3. The debt and the claim must be mutual obligations. *Morristown*, 42 B.R. at 416.

Both the promissory note and the lease were executed before the date of filing. The Bankruptcy Code does not define "mutual debt," but the cases conclude this term means that "both obligations be held by the same parties, in the same right or capacity, and arise from pre-petition obligations." *In re Denby Stores, Inc.*, 86 B.R. 768, 777 (Bankr.S.D.N.Y.1988); See also *Boston and Maine*, 785 F.2d at 566; *In re Communicall Cent., Inc.*, 106 B.R. 540, 545 (Bankr.N.D.Ill.1989); *In re Eggemeyer*, 75 B.R. 20, 21 (Bankr.S.D.Ill.1987); *In re National Structures, Inc.*, 74 B.R. 986, 989 (Bankr.E.D.Wis.1987); *In re Brooks Farms*, 70 B.R. 368, 371 (Bankr.E.D.Wis. 1987). The "filing of the bankruptcy petition fixes 'the line of cleavage with reference to the conditions of the bankruptcy estate' and only debts or credits existing at the time of the filing can be setoff against the other." *Elsinore*, 67 B.R. at 945, *citing Morristown*, 42 B.R. at 417. See also *Williams*, 61 B.R. at 574. "It is as if the bankruptcy process creates two separate firms—the pre-bankruptcy firm that pays off old claims against pre-bankruptcy assets and the post-bankruptcy firm that acts as a brand new venture." *Boston and Maine*, 785 F.2d at 565.

■ Mutuality does not require that the debts result from the same transaction as would be necessary to recover under the theory of recoupment. Recoupment is plainly not applicable in this case since the purchase and the lease are two distinct transactions. *Denby*, 86 B.R. at 777.

■ To determine mutuality for purposes of setoff, it is necessary to pinpoint in time the creditor's claim and the debt owed the debtor in relation to the date of the bankruptcy petition. In this case, pinpointing the time of the creditor's claim is not difficult. Express rejected the unexpired lease. Had Express assumed the lease, future lease payments would have been post-petition obligations. *In re Mace Levin Associates, Inc.*, 103 B.R. 141, 143 (Bankr.N.D.Ohio 1989). But since the

lease was not assumed, the rejection "constitutes a breach of such ... lease ... immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1). Section 502(g) also classifies rejection claims as pre-petition claims. Therefore, Express' rejection of the lease resulted in a $169,-099.50 claim for Kelly as of a point in time immediately *before* the filing of the petition. *Matter of Strause*, 40 B.R. 110, 112 (Bankr.W.D.Wis.1984). *See also In re Hawaii Dimensions, Inc.*, 47 B.R. 425, 427 (D.C.1985); *In re O.P.M. Leasing Services, Inc.*, 30 B.R. 642, 650 (Bankr. S.D.N.Y.1983). This satisfies the pre-petition requirement for Kelly's claim under 11 U.S.C. § 553(a).

■ Kelly's promissory note was executed almost one and a half years before the bankruptcy filing date. The note is clearly not an executory contract requiring performance of any act by Express; Express' obligations were fully performed when it transferred the property, and Kelly is obligated to pay the remaining balance in full without any further obligation on Express' part. *See In re Evatt*, 112 B.R. 417, 419 (W.D.Okl.1990) *quoting Countryman, Executory Contracts in Bankruptcy:* Part I, 57 Minn.L.Rev. 439, 460 (1973). The note provides Kelly with the right to setoff for each monthly installment against the rent due under the lease, but it does not contain a provision for acceleration other than Kelly's right to prepay at any time. The legal question is whether the remaining note payments due after the bankruptcy filing are considered to be a pre-petition obligation, in which case the mutuality requirement for setoff is satisfied. If the remaining installments are post-petition obligations, setoff cannot be allowed. In other words, does Kelly have the right to setoff his debt of $78,761.00 on the promissory note against his lease rejection claim, thus satisfying his indebtedness in full and reducing his claim in the bankruptcy estate?

Without question, the filing of a bankruptcy petition acts to accelerate the debtor's debt, giving rise to the creditor's claim. *4 Collier on Bankruptcy*, § 553.10(2) at 553.52 (15th Ed.1991). *See also In re Lott*, 79 B.R. 869, 871–872 (Bankr.W.D.Mo.1987); *Morristown*, 42 B.R. at 417; *In re Princess Baking Corp.*, 5 B.R. 587, 590 (Bankr. S.D.Cal.1980). However, the filing of a bankruptcy petition by an entity that is owed money will not ordinarily accelerate the debt. If there had been no rejected lease and the only relationship between the parties was Kelly's promissory note, Express could not have compelled payment of the full amount remaining. Each payment would have been due as originally scheduled. *Matter of Isis Foods, Inc.* emphatically states:

> It is patent law on the issue of setoff, however, that "the right of setoff may be asserted in the bankruptcy case even though at the time the petition is filed one of the debts involved is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated. Nor is it necessary that the debt sought to be setoff be due when the case is commenced." 24 Bankr. at 76 *quoting 4 Collier on Bankruptcy* § 553.10(2) at 553–49, 553–50 (1982).

*See also 4 Collier on Bankruptcy* § 553.10 at 553–51, 52 (15th Ed.1991) (language unchanged); *NTG Industries*, 103 B.R. 195, 197 (Bankr.N.D.Ill.1989); *Matter of Matthieson*, 63 B.R. 56, 59 (D.Minn.1986); *Eggemeyer*, 75 B.R. at 21; *Lott*, 79 B.R. at 871; *Elsinore*, 67 B.R. at 938; *In re Keene*, 42 B.R. 239, 241 (Bankr.D.Maine 1984); *Princess Baking*, 5 B.R. at 590. The unequivocal language in these cases is to the effect that, for purposes of determining eligibility for setoff, it does not matter if *either* debt is unmatured. For example, the court in *NTG* allowed setoff even though the creditor's obligation was unmatured. The note in that case provided for acceleration in the event of default, but no default had occurred. The creditor's obligation in *Matthieson* was contingent and unmatured, but setoff was nevertheless allowed.

It is also helpful to look at definitions to see whether the requisite pre-petition "mutual debt owing" of § 553 encompasses a creditor's unmatured debt as well as a creditor's unmatured claim. "Claim" and

"debt" are defined in the Bankruptcy Code. "Claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ..." 11 U.S.C. § 101(4). "Debt" is defined at § 101(11) as "liability on a claim." Since the definition of "debt" is just as expansive as the definition of "claim," it follows that the debt owed by the creditor to the debtor can also be an unmatured liability. Lending support are Black's Law Dictionary's (5th Ed.) definition of "debt" as a "fixed and certain obligation to pay money or some other valuable thing or things, either in the present or in the future" (p. 363) and the definition of "existing debt" as one where "it is sufficient if there is an absolute debt owing though the period for its payment may not yet have arrived" (p. 515). Therefore, pre-petition unmatured debt can also be accelerated to accomplish setoff where other conditions of § 553 have been satisfied.

Express relies heavily on one case from Wisconsin that seems to say a creditor cannot accelerate a debt entered into prior to the bankruptcy where installment payments remain due after the bankruptcy filing. *Matter of Isbell*, 27 B.R. 926 (Bankr.W.D.Wis.1983). Express states, at page 4 of its brief: "On the date of filing, nothing was owed by Kelly to the debtor." Express is confusing amount "owed" with amount "due." *Isbell* did conclude that the creditor's mortgage payments not yet due as of the petition date could not be offset against the creditor's pre-petition damage claim, reasoning that payments not yet due as of the petition date were post-petition obligations. However, *Isbell* dealt with the Bankruptcy Act, which did not have the all-inclusive definition of "claim," and the case has never been cited in this circuit for its position on setoff.

This is no equitable reason to prevent Kelly's setoff. There is no allegation that his conduct was inequitable in any way, and future installments on his note are not needed for a reorganization since the debtor is now in Chapter 7. Kelly has the unilateral right to prepay his note. Furthermore, none of the exceptions of § 553(a)(1), (2) or (3) precluding setoff apply. Thus, Kelly's note is a pre-petition debt that can be setoff against his claim in the bankruptcy.

## 2. "IMPROVEMENT IN POSITION" AND PREFERENCE

The next question is how much of Kelly's debt can be setoff against his claim, given the limitation in 11 U.S.C. § 553(b)(1). This section creates an "improvement in position" test. The key factor in the test is what is termed "insufficiency," defined at 11 U.S.C. § 553(b)(2) as the "amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such a claim." In other words, this figure is the balance due to the creditor after making allowances for the "mutual debt owing." This balance due is calculated at the time of the bankruptcy petition and at 90 days before filing or anytime within the 90 days before filing that any amount was due the creditor, whichever is later. If the creditor's position improved, that is, if the net amount after setoff due the creditor on the date of filing is less than the net amount after setoff due at the time of the calculation in the 90 day period prior to filing, the difference in these amounts is recoverable by the trustee. *See Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1040 (5th Cir.1987); *Brooks Farms*, 70 B.R. at 372; *see also In re Madcat Two*, 127 B.R. 206, 209 (Bankr.E.D.Ark.).

On the date of filing, Kelly's debt on the promissory note was $78,761.00, and his claim was $169,099.50 for arrearages and lease rejection damages under 11 U.S.C. § 502(b)(6). Thus, after setoff, Kelly would still have a claim for $90,338.50. In the 90 days before filing, lease rejection damages (agreed to be $150,000) were not in the picture. If that portion of Kelly's claim is disregarded in the "improvement of position" analysis, 90 days before filing Kelly's debt would have been greater than at the date of filing by approximately three times his monthly note payment of $2,211.83, depending on how much was

principal and interest. But his claim would only have been the amount of past due lease payments Express owed as of that date, if any. None of the briefs provide the principal reduction on the note within the 90 day period, but it is safe to say it would have been substantially less than the lease rejection damages claim as of the petition date. At the earlier point, after any setoff, Kelly would have no claim, although his debt may have been reduced. Only if Kelly was owed *less* on the petition date would his position have improved. Because he was owed *more* at the time of filing, there was no improvement in position and, consequently, the trustee is unable to recover any amount by virtue of § 553(b)(1).

However, if lease rejection damages were figured as of 90 days before the petition, using that date as a hypothetical filing date with the agreed $150,000 in lease rejection damages, Kelly's position still would not have improved. In the 90 day pre-petition period, Kelly's brief indicates that Express made only one rental payment of $10,288.17. If so, the two months additional arrearage in lease payments is considerably higher than any possible reduction in principal on the note, again making Kelly's claim higher at filing than it was 90 days before the filing. Even if all required payments under the lease and note were made, as is alleged in the creditors' committee brief, Kelly has not improved his position. It must be assumed that the lease rejection damages would be the same 90 days before filing as they would be at filing because at each time the lease had more than one year to run and $150,000 would be the damage limit. However, the amount due on Kelly's note would be less at the time of filing than it was 90 days before filing because of payments made. He would have a smaller debt to setoff his claim at the time of filing; hence, his claim would be larger. Consequently, there is no improvement in position.

█ The remaining issue is whether Kelly received a preference under 11 U.S.C. § 547 for rents paid. The law is clear on this point—"When § 553 is determined to be applicable, § 547 cannot thereafter be utilized to undo its effect." *Brooks*

*Farms,* 70 B.R. at 372. *See also Lott,* 79 B.R. at 870.

### 3. AUTOMATIC STAY

█ It is appropriate that Kelly incorporated his earlier motion to lift the automatic stay in his answer because it is necessary to do so to allow him to setoff his debt to Express against his claim. Per 11 U.S.C. § 362(a)(7), a creditor is expressly prohibited from applying setoff rights under § 553 unless relief from the automatic stay is granted. *Communicall,* 106 B.R. at 545; *see also Cabrillo,* 101 B.R. at 446; *Elsinore,* 67 B.R. at 945; *Princess Baking,* 5 B.R. at 589.

### CONCLUSION

The court will allow Kelly to setoff his promissory note against his claim for lease rejection damages. His claim shall be for the net amount, less amounts received in mitigation of damages. The automatic stay will be lifted to allow the setoff. A separate order will be entered accordingly.

This decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.