**In re CLINTONDALE MILLS, INC., Debtor.**

**Lawrence G. FRANK, Trustee in Bankruptcy, Plaintiff,**

**v.**

**BENZEL BRETZEL BAKERY, INC., Defendant.**

**Bankruptcy No. 5–95–01097. Adversary No. 5–96–00362A.**

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

Feb. 2, 1998.

Lawrence Frank, Harrisburg, PA, Trustee in Bankruptcy.·

Joseph A. Grappone, Altoona, PA, for Defendant.

### OPINION AND ORDER[1]

JOHN J. THOMAS, Bankruptcy Judge.

The instant Adversary was initiated by Plaintiff, Lawrence G. Frank, in his capacity as Trustee for the Debtor, Clintondale Mills, Inc. The Complaint requests the Court to enter judgment in favor of the Plaintiff and against the Defendant in the amount of Fifty–Eight Thousand Three Dollars and Fifty–Seven Cents ($58,003.57) which is the outstanding balance due and owing the Debtor

---

1. Drafted with the assistance of Richard P. Rog-    ers, Law Clerk.

by the Defendant for the prepetition delivery of flour. The Defendant responded it does not owe a balance to the Plaintiff. Rather, primarily, because of breach of a prepetition contract, the Debtor owes the Defendant Eighty–Five Thousand Three Hundred Twenty–Six Dollars and Forty–Three Cents ($85,326.43). The facts have been stipulated to by the parties and are as follows:

1. On May 22, 1995, David E. Johnson, owner of Clintondale Mills, wrote a letter to Keith Natoli, the general manager of Benzel Bretzel Bakery, confirming the price quoted for delivery of loads of flour at a certain dollar amount per CWT (per hundred weight) for the months of August, 1995 through June, 1996. This letter is attached as exhibit "A" to the Answer and Counterclaim of the Defendant.

2. From May 25, 1995 through June 27, 1995, the Debtor made various deliveries of flour to the Defendant which deliveries are evidenced by invoices attached as Exhibit "A" to the Complaint. Those invoices total $58,003.57 and were not paid by the Defendant at the time of the filing of the petition.

3. By letter dated June 29, 1995 (attached as Exhibit "B" to the answer and counterclaim) from Ernest J. Cimadamore, president of Clintondale Mills to Keith Natoli, the Debtor confirmed that it would compensate the Defendant for such cost of flour, over the price that the Defendant had previously contracted with the Debtor for that period from June 28, 1995 until July 17, 1995.

4. Attached as Exhibit "C" to the Answer and Counterclaim is a letter dated July 7, 1995 signed by Keith Natoli to Ernest Cimadamore confirming various issues raised at a meeting the prior day, July 6, 1995, at Clintondale Mills. The letter, inter alia, confirmed a credit of Nine Thousand Two Hundred Ninety–Five Dollars ($9,295.00) representing the market difference from the contract price and the purchase price for ten loads of flour from the time period of June 28, 1995 to July 17, 1995. The letter further confirmed that Clintondale Mills would honor the contract of May 22, 1995 and would cover the difference in the contract price and the replacement purchase price, if necessary. The contract represented a pur-

chase of 131 loads of flour to be delivered at times between August 1, 1995 and June 30, 1996 for a total credit of $134,035.00.

5. On July 18, 1995 debtor filed a Chapter 11 petition.

6. On March 22, 1996, the Chapter 11 case was converted to one under Chapter 7.

7. The May 22, 1995 contract was not assumed by the Debtor and therefore was deemed rejected by the Debtor under the provisions of 11 U.S.C. § 365(g)(1).

Based upon these facts, the Plaintiff seeks turnover of the Fifty–Eight Thousand Three Dollars and Fifty–Seven ($58,003.57) and further argues that pursuant to 11 U.S.C. § 553 the Defendant improved its position as a creditor to the Debtor during the ninety (90) day period prior to the Bankruptcy by exercising its setoff rights.

The Defendant's response can be summarized as follows. The Defendant properly exercised its rights of setoff during the ninety (90) day period but, nevertheless, did not owe the Plaintiff any debt during that same time. As an alternative argument, the Defendant urges the equitable doctrine of recoupment should disallow the Plaintiff's Complaint against the Defendant. Finally, the Defendant asserts a second setoff as a counterclaim to the Plaintiff's Complaint.

## DISCUSSION

The Bankruptcy Code does not contain a recoupment provision. The common law doctrine of recoupment provides an exception to setoff in bankruptcy cases. Recoupment "is setting up of a demand *arising from the same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." 4 COLLIER ON BANKRUPTCY § 553.03, at 553–15–17 (emphasis added). This doctrine is justified on the grounds that "where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be

inequitable." *Lee [v. Schweiker]*, 739 F.2d [870] at 875 [(1984)]. Thus, so long as the creditor's claim arises out of the identical transaction as the debtor's, that claim may be offset against the debt owed to the debtor, without concern for the limitations put on the doctrine of setoff by Code section 553. *[In re] Davidovich*, 901 F.2d [1533] at 1537 [(1990)]. In the bankruptcy context, recoupment has often been applied where the relevant claims arise out of a single contract "that provide[s] for advance payments based on estimates of what ultimately would be owed, subject to later correction." *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986). However, an express contractual right is not necessary to effect a recoupment. *See In re Holford*, 896 F.2d 176, 178 (5th Cir.1990). Nor does the fact that a contract exists between the debtor and creditor automatically enable the creditor to effect a recoupment. *In re University Medical Center*, 973 F.2d 1065 (3rd Cir.1992).

■ Based upon the facts and the above quoted language from the Third Circuit, the Court finds that the equitable doctrine of recoupment does not apply and cannot serve as a defense for the Defendant. This is so, primarily, because the facts present a series of separate contracts for the delivery and purchase of flour rather than a single transaction.

*11 U.S.C. § 553 (Setoff)* provides in its entirety as follows:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition:

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

(b)(1) Except with respect to a setoff of a kind described in sections 362(b)(6), 362(b)(7), 362(b)(14), 365(h), 546(h), or 365(i)(2) [sic], of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

(C) For the purpose of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

■ The following requirements must be met to setoff pursuant to § 553: A creditor owes a prepetition debt to the debtor; the debtor owes a prepetition debt to that creditor; and, the debts in question are mutual. *In re MetCo Mining and Minerals, Inc.*, 171 B.R. 210 (Bkrtcy.W.D.Pa.1994). The parties agreed that there was mutuality of debts and that the creditor owed a prepetition debt to the Debtor. An open issue is whether there

was a prepetition debt owing from the Debtor to the Defendant and if so, the amount of that debt.

This issue of the existence of a prepetition debt is partially resolved by reference to the letter of June 7, 1995, which provides that the Debtor will give the Defendant a credit of Nine Thousand Two Hundred Ninety–Five Dollars ($9,295.00) for deliveries of flour made during the period June 28, 1995 to July 17, 1995. A prepetition debt did run from the Debtor to the Defendant for at least that amount.

█ The next issue is whether the balance of the debt alleged by the Plaintiff, approximating One Hundred Thirty–Four Thousand Dollars ($134,000.00) and representing the difference in the contract price and the delivery price of flour as referenced in the May 22, 1995 contract arose prepetition or postpetition. While the contract was entered into prepetition the delivery of the flour was to occur during a period after the petition was filed. The Defendant argues that there was no breach of the contract prepetition and, therefore, the Plaintiff did not owe a prepetition debt to the Defendant on the May 22, 1995 contract. The Plaintiff argues that when an executory contract is rejected it is considered a breach of that contract which relates back to immediately before the date the petition is filed. The Plaintiff cites § 365(g)(1) of the Bankruptcy Code in support. That Section reads as follows:

(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1)—if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition;

The Plaintiff's position is further supported by the cases of, *Express Freight Lines, Inc. v. Kelly,* 130 B.R. 288 (Bkrtcy. E.D.Wis.1991) and *In re Mace Levin Associates, Inc.,* 103 B.R. 141 (Bkrtcy.N.D.Ohio 1989). We agree. For purposes of determining the amount of prepetition debt from

the Debtor to the Defendant, we find that the postpetition breach effectuated a breach just prior to the filing of the petition and that the total outstanding prepetition debt from the Debtor to the Defendant is One Hundred Forty–Three Thousand Three Hundred Thirty Dollars ($143,330.00).

The next issue for resolution is determining the amount, if any, the Plaintiff can recover under § 553(b). This determination rests entirely on whether the Defendant exercised its rights of setoff prepetition. Furthermore, if the Defendant did exercise that right, what was the amount claimed to be setoff? Lastly, did that setoff improve the creditors position vis-a-vis the Debtor using the formula provided in the Bankruptcy Code at § 553(b)(1)?

In addressing the question as to whether a creditor's actions, or refusal to act, constituted an exercise of its setoff rights, the Supreme Court of the United States in the case of *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) **wrote that:**

A requirement of such an intent is implicit in the rule followed by a majority of jurisdictions addressing the question, that a setoff has not occurred until three steps have been taken: (i) a decision to effectuate a setoff, (ii) some action accomplishing the setoff, and (iii) a recording of the setoff. See, *e.g., Baker v. National City Bank of Cleveland,* 511 F.2d 1016, 1018 (C.A.6 1975) (Ohio law); *Normand Josef Enterprises, Inc. v. Connecticut Nat. Bank,* 230 Conn. 486, 504–505, 646 A.2d 1289, 1299 (1994).

The formula this Court must follow to determine the extent of the setoff the Plaintiff can recover is set forth in § 553(b)(1) and (2). This formula was adequately explained by the Court in the case of *Express Freight Lines, Inc. v. Kelly, supra* at 293.

This section creates an "improvement in position" test. The key factor in the test is what is termed "insufficiency," defined at 11 U.S.C. § 553(b)(2) as the "amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such a claim." In other

words, this figure is the balance due to the creditor after making allowances for the "mutual debt owing." This balance due is calculated at the time of the bankruptcy petition and at 90 days before filing or anytime within the 90 days before filing that any amount was due the creditor, whichever is later. If the creditor's position improved, that is, if the net amount after setoff due the creditor on the date of filing is less than the net amount after setoff due at the time of the calculation in the 90 day period prior to filing, the difference in these amounts is recoverable by the trustee. *See Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1040 (5th Cir.1987); *Brooks Farms*, 70 B.R... at 372; *see also In re Madcat Two*, 127 B.R. 206, 209 (Bankr.E.D.Ark.1991).

■ The Plaintiff argues that there are two separate times that the Defendant could be considered to have exercised its right of setoff. The first event is the letter of July 7, 1995, approximately ten (10) days prior to the filing of the petition. The next day setoff could have occurred was immediately preceding the filing of the Bankruptcy. While the Bankruptcy Code specifically provides that a postpetition breach through rejection of an executory contract results in a prepetition breach of contract claim, the same argument cannot be made that the postpetition rejection automatically creates a setoff by operation of law immediately prior to the filing of the bankruptcy. The Plaintiff's Brief does not provide any case law to support the argument that the setoff occurred immediately prior to the filing of the petition. Furthermore, as the Supreme Court wrote in the *Citizens Bank of Maryland v. Strumpf case, supra,* there has to be a decision to effectuate a setoff together with some action accomplishing the setoff and a recording of the setoff. The Court has found no support for Plaintiff's position in the Bankruptcy Code or case law.

■ The July 7, 1995 letter, attached as Exhibit "C" to the answer and counterclaim, undoubtedly exercises a right of setoff in the amount of Nine Thousand Two Hundred Ninety–Five Dollars ($9,295.00) representing the difference from the contract price and the purchase price for ten (10) loads of flour for the period of June 28, 1995 to July 17, 1995. At the time of this letter, the Defendant was indebted to Clintondale Mills in excess of Fifty Eight Thousand Dollars ($58,-000.00). The Court finds that this letter did express the Defendant's intent to exercise its rights of setoff concerning the debt it had to Clintondale Mills on July 7, 1995.

This finding, however, will not satisfy the Plaintiff because he asserts that the July 7, 1995 letter further operates as a setoff to the May 22, 1995 contract. This position is unsupported. The language of the July 7, 1995 letter does address the earlier contract of May 22, 1995 but only to the extent that it reiterates and confirms the terms of the earlier contract. Based upon the foregoing, the Court finds that the only prepetition setoff which occurred in this case was on July 7, 1995 in the total amount of Nine Thousand Two Hundred Ninety–Five Dollars ($9,295.00).

The Court will now address the amount which the Plaintiff can recover because of the setoff.

■ Pursuant to § 553(b)(1), the Plaintiff may recover from the creditor the amount so setoff to the extent that any insufficiency which existed on the date of such setoff was less than the insufficiency on the later of ninety (90) days before the date of the filing of the petition and the first date during the ninety (90) days immediately preceding the date of the filing of the petition on which there was an insufficiency. The Court finds that on July 7, 1995, the date determined to be the setoff date, the Defendant owed the Debtor Fifty–Eight Thousand Three Dollars and Fifty–Seven Cents ($58,003.57) and the Debtor owed the Defendant Nine Thousand Two Hundred Ninety–Five Dollars ($9,295.00). On July 7, 1995, there was a zero insufficiency pursuant to the definition provided in § 553(b)(2), the claim against the Debtor ($9,295.00), did not exceed the mutual debt owing to the Debtor by the holder of such claim ($58,003.57).

The Court's analysis does not stop at this point. The date of setoff must be compared with one of two other relevant dates estab-

lished in the mathematical formula this Court must apply pursuant to § 553(b)(1) in order to determine the extent which the Plaintiff can recover the setoff. Those dates are ninety (90) days prior to the date of the filing of the bankruptcy or the first date within the ninety (90) days prior to filing of the bankruptcy in which there was an insufficiency. There was no insufficiency ninety (90) days prior to the filing of the bankruptcy according to the record presented to the Court. As already determined, there was no insufficiency on the date of the setoff on July 7, 1995. The Plaintiff's main argument is that the relation back of the debt as a result of the postpetition breach of the contract through rejection created an insufficiency just prior to the date of the filing of the bankruptcy. The Court finds absolutely no support for the Plaintiff's position. The relation back of the breach is a fiction created by statute. There was no corresponding fiction created by the language of § 553 to find that the postpetition breach can create a prepetition debt which can be used for calculation of the insufficiency under § 553(b)(1). The language of the section is explicit in that the Plaintiff can recover from the creditor the amount setoff to the extent that the insufficiency on the date of setoff was less than an insufficiency which was created or existed ninety (90) days before the date of the filing or the first date within the ninety (90) days in which there was an insufficiency. Here, there was no insufficiency on or within ninety (90) days from the date of the petition and therefore the Plaintiff's attempt to recover the Nine Thousand Two Hundred Ninety-Five Dollars ($9,295.00) setoff fails under § 553. This finding would comport with the purpose of § 553(b), that is to regulate prepetition conduct.

Additionally, the Defendant raised a second setoff by way of a counterclaim to this Adversary. In short, the second counterclaim directs itself to the remaining portion of the Plaintiff's original claim for Fifty-Eight Thousand Three Dollars and Fifty-Seven Cents ($58,003.57). The amounts of the mutual debts between the parties were stipulated to thus, acknowledging those mutual debts.

Whether to permit a setoff is in the discretion of the Court. *In re Penn Central Transportation Co.*, 486 F.2d 519 (3rd Cir.1973); *Brunswick Corporation v. Clements*, 424 F.2d 673 (6th Cir.1970). Principles of equity apply in making that decision. *Brunswick, supra* at 675. Equity dictates that because of the admission by the Debtor that it owes the creditor a total debt of One Hundred Forty-Three Thousand Three Hundred Dollars ($143,300.00), the Court not order the creditor to turnover Fifty-Eight Thousand Three Dollars and Fifty-Seven Cents ($58,003.57) to the Plaintiff.

The record establishes that there is a deficiency owed to the Defendant amounting to Eighty-Five Thousand Three Hundred Twenty-Six Dollars and Forty-Three Cents ($85,326.43). The Court will not enter judgment against the estate for that amount. The Court will recognize, however, that the Defendant may have a claim against the estate for that amount. An appropriate Order will follow.